**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JAMAL WALKER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-6809** |
| **DARREL VANNOY** | **SECTION: "R"(1)** |

### SUPPLEMENTAL REPORT AND RECOMMENDATION

Petitioner, Jamal Walker, is a state inmate incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On December 23, 2015, he filed the instant federal application for habeas corpus relief.[1] On March 21, 2016, United States Magistrate Judge Sally Shushan issued a report recommending that his application be considered timely filed but nevertheless dismissed without prejudice because he failed to exhaust his state-court remedies with respect to one of his three claims.[2] On April 4, 2016, petitioner filed objections to that Report and Recommendation, as well as a motion to amend his application to delete the unexhausted claim, to stay these proceedings while he exhausted that claim in the state courts, and to amend the petition to add additional claims.[3] On April 28, 2016, United States District Judge Sarah Vance granted petitioner's request to amend his petition to delete the unexhausted claim and denied the motion for a stay. Judge Vance deferred ruling on the motion to amend the petition to add additional claims and referred that motion to Magistrate Judge Shushan.[4] On May 23, 2016, petitioner filed his amended petition

---

[1] Rec. Doc. 3.
[2] Rec. Doc. 14; Walker v. Vannoy, Civ. Action No. 15-6809, 2016 WL 1737961 (E.D. La. Mar. 21, 2016).
[3] Rec. Doc. 15.
[4] Rec. Doc. 17; Walker v. Vannoy, Civ. Action No. 15-6809, 2016 WL 1705085 (E.D. La. Apr. 28, 2016).

as directed by Judge Vance.[5]  Magistrate Judge Shushan then retired, and this matter was thereafter reassigned to the undersigned United States Magistrate Judge.[6]

### Motion to Amend

The first issue before the Court is whether petitioner should be allowed to amend his petition to assert the additional claims.  The state opposes the proposed amendments, arguing that they would be futile because the new claims are time-barred.[7]  It is beyond cavil that a district court may deny a motion to amend "when the amendment would be futile."  United States v. Gonzales, 592 F.3d 675, 681 (5th Cir. 2009).

As the state correctly argues, habeas corpus petitioners are subject to a one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act (AEDPA).  The United States Supreme Court addressed the interplay between that limitations provision and the rules concerning amendments in Mayle v. Felix, 545 U.S. 644 (2005).  The Supreme Court explained:

> By statute, Congress provided that a habeas petition "may be amended ... as provided in the rules of procedure applicable to civil actions."  28 U.S.C. § 2242.  The Civil Rule on amended pleadings, Rule 15 of the Federal Rules of Civil Procedure, instructs:  "An amendment of a pleading relates back to the date of the original pleading when ... the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  Fed. Rule Civ. Proc. 15(c)(2).

Id. at 649.  In interpreting the foregoing language, the Supreme Court then held that the claims in an amended habeas corpus petition do not "relate back" merely because they arose from the same trial and conviction as the claims in the original petition.  Id. at 649-50.  Otherwise, "[a] miscellany of claims for relief could be raised later rather than sooner and relate back, for 'conduct, transaction, or occurrence' would be defined to encompass any pretrial, trial, or post-trial error

---

[5] Rec. Doc. 18.
[6] Rec. Doc. 20.
[7] Rec. Doc. 19.

that could provide a basis for challenging the conviction." Id. at 661.  The Court reasoned that

such an approach would be contrary to the goals of the AEDPA:

> Congress enacted AEDPA to advance the finality of criminal convictions.  To that
> end, it adopted a tight time line, a one-year limitation period ordinarily running
> from "the date on which the judgment became final by the conclusion of direct
> review or the expiration of the time for seeking such review," 28 U.S.C. §
> 2244(d)(1)(A).  If claims asserted after the one-year period could be revived simply
> because they relate to the same trial, conviction, or sentence as a timely filed claim,
> AEDPA's limitation period would have slim significance.

Id. at 662 (citations omitted).  Accordingly, the Supreme Court held that "[a]n amended habeas

petition … does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts

a new ground for relief supported by facts that *differ in both time and type* from those the original

pleading set forth."  Id. at 650 (emphasis added).

Petitioner's proposed claims clearly would not "relate back" under this rule for the

following reasons.  Petitioner asserted three claims in his timely-filed original petition:  (1) there

was insufficient evidence to support his conviction; (2) the identification procedure was

impermissibly suggestive; and (3) he received ineffective assistance of counsel in the habitual

offender proceeding.  That third claim was unexhausted and, as noted, has been withdrawn.  He

now seeks to add the following claims:  (1) counsel was ineffective for failing to investigate

possible alibi witnesses, interview his codefendant, and introduce documents concerning the seized

currency; (2) counsel was ineffective for refusing to allow him to testify; and (3) cumulative errors

rendered his conviction unreliable.

The new claims obviously are "supported by facts that differ in both time and type from

those the original pleading set forth."  It is true that petitioner's original petition included an

ineffective assistance of counsel claim and that his proposed new claims also concern allegedly

ineffective assistance.  Nevertheless, that commonality alone is not enough for the new claims to

"relate back" to the original filing.  On the contrary, the United States Fifth Circuit Court of Appeals has held:

> We agree with the approach adopted by our sister circuits.  New claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision.  Rather, we must look to whether [the petitioner]'s new claim asserts "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  Mayle v. Felix, 545 U.S. 644, 650, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005).  If it does, then his proposed amendment does not relate back to his original pleading and is time-barred.

United States v. Gonzales, 592 F.3d 675, 680 (5th Cir. 2009).

Here, petitioner's new claims obviously differ from his original claim in both time and type.  The new claims concern his counsel's actions *prior to and at trial*, whereas his original claim concerned counsel's much later *post-trial* actions in the habitual offender proceedings.  The new claims also concern entirely distinct types of alleged attorney misfeasance.  Specifically, his new claims concern the alleged failure of counsel *to perform investigations and interviews* and *to introduce evidence and testimony* at trial, whereas his original claim alleged that counsel failed *to object* to the habitual offender bill of information and the state's evidence.  Where, as here, a petitioner's new claims vary so dramatically both in time and type from his original claim, they do not relate back to the original petition.  See id.; United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005); Davenport v. United States, 217 F.3d 1341, 1346 (11th Cir. 2000); Ford v. United States, Crim. Action No. V-06-32, 2011 WL 96567, at *2 (S.D. Tex. Jan. 10, 2011); United States v. Hale, Crim. Action No. 07-o385, 2010 WL 2105141, at *10 (S.D. Ala. May 24, 2010).

Accordingly, petitioner's new claims would be timely only if he initially asserted them in federal court within the one-year statute of limitations.  He did not.  For the reasons explained in Magistrate Shushan's original Report and Recommendation, the one-year federal limitations

period in this case expired on March 7, 2016.[8]  Petitioner's motion to amend, which was filed

along with his objections to that Report and Recommendation, were filed by petitioner on April 4,

2016.[9]

For the foregoing reasons, petitioner's proposed amendments would be futile and,

therefore, the motion to amend should be denied.  As a result, this Supplemental Report and

Recommendation will address only the two exhausted claims from his original petition, i.e. that

there was insufficient evidence to support his conviction and the identification procedure was

impermissibly suggestive.

### Standards of Review

The AEDPA comprehensively overhauled federal habeas corpus legislation, including 28

U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for

pure questions of fact, pure questions of law, and mixed questions of both.  The amendments

"modified a federal habeas court's role in reviewing state prisoner applications in order to prevent

federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent

possible under law.  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court

will give deference to the state court's decision unless it "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28

U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

---

[8] Rec. Doc. 14, pp. 2-8; Walker v. Vannoy, Civ. Action No. 15-6809, 2016 WL 1737961, at *2-5 (E.D. La. Mar. 21, 2016).

[9] Rec. Doc. 15.  A prisoner's pleadings are considered "filed" when they are "delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Because petitioner dated his filing April 4, 2016, see Rec. Doc. 15, p. 33, it was obviously given to prison officials for mailing on or after that date.

determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to

6

> extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.   AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
> 
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

7

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

law and apply the strictly deferential standards of review mandated therein.  White v. Woodall,

134 S. Ct. 1697, 1701 (2014).

## Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this

case as follows:

> On October 20, 2007, Bianca Davis ("Ms. Davis") went to a birthday party
> at 1420 Utah Beach Drive in Bridge City.  That night, between 9:00 and 9:15 p.m.,
> Ms. Davis walked outside to call her sister.  As Ms. Davis was leaning on a car
> talking to her sister, she noticed a black Chrysler Sebring convertible with dark-
> tinted windows drive past her.  Ms. Davis then noticed the brake lights come on.
> She hung up the phone and, as she did so, she saw a man she later identified as
> Walker walk toward her.

> Ms. Davis asked Walker how he was doing, and Walker said, "Fine b..ch."
> Walker immediately put a black semi-automatic gun to Ms. Davis' head and said,
> "I'll be fine when you give me your purse."[FN2]  Walker also demanded Ms.
> Davis' cell phone.  After Ms. Davis gave Walker her purse and cell phone, Walker
> walked back to the black Sebring and reached for the passenger side door handle to
> get into the car.  When the car sped off, Ms. Davis screamed and ran inside the
> house.

> [FN2]  Deputy Rhonda Goff testified that Ms. Davis, who was
> unfamiliar with guns, said that the gun Walker used was similar to
> the one that Deputy Goff carried, which was a semi-automatic pistol,
> and not a "cowboy-type gun" or revolver.

> Ms. Davis' friend, Rosemary Cook, called 911 and reported the robbery
> because Ms. Davis was too upset to do so.  Deputy Rhonda Goff of the Jefferson
> Parish Sheriff's Office (JPSO) came to the scene, and Ms. Davis told her what

happened.  After talking to Ms. Davis, Deputy Goff broadcasted a description of the car and the suspect (a black male, 5′11″, medium build, with a clean-shaven head wearing blue jeans and a black-hooded shirt) over the police radio.[FN3]  The deputy wrote down Ms. Davis' version of events, and Ms. Davis signed the written statement.   Ms. Davis testified that she had just cashed a check and had approximately $500 in her purse, which included hundreds, fifties, twenties, and some smaller bills.

> [FN3]  Ms. Davis testified that Walker had a hood over his head at the time of the robbery, but it did not cover his face.

Meanwhile, JPSO Deputy Chad Mackie was at the scene of another armed robbery at Barataria and the Westbank Expressway when he heard the broadcast.  Approximately 30 to 45 minutes later, Deputy Mackie saw a car with two black males that matched the descriptions given by Ms. Davis.  Deputy Mackie got in his vehicle and started following the car, which went westbound up the ramp of the Westbank Expressway at Avenue D.  The deputy turned on his lights and sirens and pulled the vehicle over to the side of the expressway just before the Lafayette Street exit.  Deputy Mackie exited his car and ordered the two occupants to the rear of the car, where he handcuffed them and patted them down for his safety.

Deputy Mackie briefly searched the black Sebring and, as he did so, he observed a handgun on the passenger side floorboard.  He picked up the gun, removed the bullets and the magazine and locked it inside his vehicle to ensure his safety.[FN4]   After other officers arrived, Deputy Mackie conducted a more thorough search of the suspects and found $475 in cash split almost evenly on the driver (Adrian Hall) and the passenger (Walker).  The cash included hundreds, fifties, twenties, and some smaller bills.  Ms. Davis' purse was never recovered.

> [FN4]  Deputy Goff testified that the gun retrieved from the black Sebring was slightly larger than her gun and a different caliber.  The gun retrieved from the black Sebring was a .40 caliber, and Deputy Goff's gun was a .9mm.

A short while after the robbery, Ms. Davis received a phone call from Deputy Goff who told her that they had possibly caught the perpetrator of the robbery.  The deputy requested that Ms. Davis meet them on the upper level of the Westbank Expressway just before the Lafayette Street exit.  Ms. Davis went to that location with her mother and her sister and positively identified Walker as the perpetrator and the black Sebring as the one used in the robbery.  Ms. Davis was able to identify Walker as the perpetrator on the expressway, even though he was wearing an orange-reddish shirt and not the black-hooded shirt he wore at the time of the robbery.  At trial, Ms. Davis positively [identified] Walker as the perpetrator and the gun found in the black Sebring as the same gun Walker used to rob her.

After Walker was placed in custody, someone used the credit cards and checks that had been in Ms. Davis' purse.  The State and the defense stipulated that if corporate counsel or representatives from Pizza Hut or Domino's Pizza were called, they would testify that it is their policy not to report worthless checks to the district attorney's office or to follow-up with worthless check cases.  The State and the defense also stipulated that if Betty Hiladang, one of the heads of the worthless check unit at the district attorney's office were called as a witness, she would testify that there had been no affidavits filed by Pizza Hut or Domino's Pizza in connection with the worthless checks issued on Ms. Davis' account after the robbery.[10]

### Petitioner's Claims

In the instant case, petitioner was convicted of armed robbery under Louisiana law.  He now asserts two interrelated claims:  (1) his identification by Davis should have been suppressed and (2) there was insufficient evidence to support his conviction.  On direct appeal, the Louisiana Fifth Circuit Court of Appeal denied those claims, holding:

> Walker assigns two errors for our review.  He asserts that the motion to suppress the identification should have been granted and that the evidence is insufficient to support the conviction.

> We recognize that, when a defendant raises issues on appeal as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.  The reason for that is because, when the entirety of the evidence, including evidence that was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot.[FN5] However, in this instance, the issue of identification is the main thrust of Walker's argument regarding the sufficiency of the evidence.  Therefore, we will combine consideration and analysis of both assignments of error in the same discussion.

> [FN5]  State v. Taylor, 04-346, p. 4 (La. App. 5 Cir. 10/26/04), 887 So.2d 589, 592.

> To support a conviction for armed robbery, the State must prove beyond a reasonable doubt that there was a taking of anything of value from the person of another by use of force or intimidation while armed with a dangerous weapon.[FN6]  A gun used in connection with and at the scene of a robbery is as a matter of law a dangerous weapon.[FN7]

> [FN6]  La. R.S. 14:64(A); State v. Ragas, 07-3 (La.App. 5 Cir. 5/15/07), 960 So.2d 266, 271, writ denied, 07-1440 (La. 1/7/08), 973

---

[10] State v. Walker, 66 So.3d 486, 489-90 (La. App. 5th Cir. 2011); State Rec., Vol. 1 of 5.

So.2d 732, <u>cert. denied</u>, 555 U.S. 834, 129 S.Ct. 55, 172 L.Ed.2d 56 (2008).

[FN7]   <u>State v. Refuge</u>, 300 So.2d 489, 491-92 (La. 1974).

In the instant case, Walker does not argue that the State failed to establish any of the essential statutory elements of his conviction.  Rather, Walker contends that the State failed to prove beyond a reasonable doubt his identity as the offender.

In addition to proving the statutory elements of the charged offense at trial, the State is required to prove the perpetrator's identity.[FN8]  When the key issue is identification, the State must negate any reasonable probability of misidentification in order to carry its burden of proof.[FN9]  Positive identification by only one witness is sufficient to support a conviction.[FN10]

[FN8]  <u>State v. Ingram</u>, 04-551 (La. App. 5 Cir. 10/26/04), 888 So.2d 923, 926.
[FN9]  <u>Id</u>.
[FN10]   <u>State v. Williams</u>, 02-645 (La. App. 5 Cir. 11/26/02), 883 So.2d 497, 503, <u>writ denied</u>, 02-3182 (La. 4/25/03), 842 So.2d 398.

Walker maintained throughout the prosecution that he was mistakenly identified as the robber.  In the motion to suppress the evidence, Walker argued that the "show up" identification procedure was suggestive and unreliable.  He further argued that Ms. Davis was mistaken in her identification of him because she insisted on seeing the suspects' car before identifying him as the perpetrator, and the identification was made while he was seated in handcuffs in front of the passenger side of the car.  Walker argued that the presence of the black Sebring made the identification unduly suggestive because, in Ms. Davis' mind, whoever was the passenger in the car was the robber.

Walker also points out that he was not wearing the same clothing at the time he was identified as the perpetrator wore at the time of the robbery.  He notes that neither the hooded shirt worn by the perpetrator, nor Ms. Davis' purse, was found in the black Sebring.

A trial court's decision to deny a motion to suppress is afforded great weight, and will not be set aside unless the preponderance of the evidence clearly favors suppression.[FN11]   An appellate court is not limited to the evidence adduced at the hearing on the motion; instead, it may also consider pertinent evidence given at trial, in determining whether the ruling on a defendant's motion to suppress is correct.[FN12]

[FN11]   <u>State v. Raines</u>, 00-1941 (La.App. 5 Cir. 5/30/01), 788 So.2d 635, 639-40, <u>writ denied</u>, 01-1906 (La. 5/10/02), 815 So.2d 833.
[FN12]  <u>Id</u>. at 640.

11

A defendant challenging an identification procedure has the burden of proving the identification was suggestive and there was a substantial likelihood of misidentification as a result of the identification process.[FN13]  An identification procedure is suggestive if, during the procedure, the witness's attention is unduly focused on the accused.[FN14]  Even if an identification procedure is suggestive, it is the likelihood of misidentification, not the mere existence of suggestiveness, which violates due process.[FN15]

> [FN13]  State v. Hurd, 05-258 (La.App. 5 Cir. 11/29/05), 917 So.2d 567, 570, writ denied, 06-1128 (La. 11/17/06), 942 So.2d 530.
> [FN14]  State v. Robinson, 07-832 (La.App. 5 Cir. 4/15/08), 984 So.2d 856, 865, writ denied, 08-1086 (La. 12/19/08), 996 So.2d 1132.
> [FN15]  State v. Hurd, 917 So.2d at 570.

Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony.[FN16]  Factors to consider in assessing the reliability of an identification include:  (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation.[FN17]

> [FN16]  Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).
> [FN17]  Manson v. Brathwaite, 97 S.Ct. at 2253.

Although "show up" or one-on-one identifications are not favored in law, circumstances may justify the use of such procedures.[FN18]  One such exception is when the suspect is apprehended and viewed soon after the crime.  Such immediate identifications increase accuracy in identification and provide for the expeditious release of innocent suspects.[FN19]  One-on-one identifications similar to the one at issue herein have been held not to be suggestive.[FN20]

> [FN18]  State v. Ayo, 08-468 (La.App. 5 Cir. 3/24/09), 7 So.3d 85, 93, writ denied, 09-1026 (La. 3/5/10), 28 So.3d 1006.
> [FN19]  Id.
> [FN20]  See, State v. Scott, 06-134 (La.App. 5 Cir. 7/25/06), 939 So.2d 462, writ denied, 06-2133 (La. 3/30/07), 953 So.2d 61.

In the instant case, we find that, applying the Manson v. Brathwaite factors, even if the identification was considered suggestive, Walker has failed to show there was a substantial likelihood of misidentification.  The evidence shows that Ms. Davis had an opportunity to observe the perpetrator at the time of the crime and that her degree of attention was excellent.  Ms. Davis testified that she saw

Walker walk toward her and that she saw his face and made eye contact with him. She explained that the area was "lit up" with street lights and that the weather conditions were clear.[FN21]  Ms. Davis testified at the suppression hearing that, when she talked to the police after the robbery, she remembered everything to the "T" about the robbery because she was aware of her surroundings.  She further testified that she had good vision and that she did not wear any type of visual aid and had never been directed to wear one by a physician.

> [FN21]  Deputy Goff described the lighting conditions at the crime scene as "fair."

Shortly after the robbery, Ms. Davis gave the police a physical description of the robber, his clothing, and the car used in the robbery.  Ms. Davis testified at the suppression hearing that the robber was a black man, "kind of tall," with a clean-shaven head, and he had a hood over his head but not covering his face.  She explained that she was able to see his head because it was not covered all the way.

Also, Ms. Davis expressed a high level of certainty at the confrontation, and the time between the crime and the confrontation was short.  Ms. Davis positively identified Walker approximately 45 minutes to one hour after the robbery, even though he was wearing an orange-reddish shirt, and not the black-hooded shirt he was wearing at the time of the robbery.  She also positively identified Walker at the suppression hearing and at trial as the man who robbed her.  Ms. Davis testified at trial that she was "100 percent positive" that the man she identified at the top of the Westbank Expressway was the same man who had robbed her one hour earlier.  Ms. Davis further testified at trial that "this man sitting right here" (indicating Walker) was that same man.

Additionally, Deputy Goff testified at trial that Ms. Davis "immediately" and "emphatically" identified Walker when she saw him at the top of the expressway, and that Ms. Davis never wavered in her identification and never looked at the other suspect, nor said she was not sure of her identification.  Ms. Davis maintained that the police did not tell her which of the two suspects she should identify and that no one forced, threatened, or coerced her into identifying Walker.

Upon review, we find that the trial judge did not err by denying the motion to suppress the identification.

In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt.[FN22]  In cases involving circumstantial evidence, the trial court must instruct the jury that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of

innocence."[FN23]   The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events.   Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.[FN24]

> [FN22]   Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
> [FN23]  La. R.S. 15:438.
> [FN24]  State v. Washington, 03-1135 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977.

At trial, the State presented evidence to show that Walker robbed Ms. Davis while armed with a gun. Ms. Davis testified that a black man exited a black Sebring convertible, held a gun to her head, and demanded her purse and cell phone.  After Ms. Davis gave him those items, she saw him walk to the black Sebring and reach for the passenger side door handle.   The vehicle then sped away.   She gave a description of the perpetrator and the car to the police.  A deputy subsequently called Ms. Davis to inform her that they might have caught the suspect.  Ms. Davis proceeded to the deputy's location, where she identified Walker as the perpetrator and the black Sebring as the car used in the robbery.

The evidence at trial showed that Ms. Davis had $500 in large bills in her purse before it was stolen, and the deputy found $475 in large bills split almost evenly between Walker and the driver.  A gun was found on the passenger side floor board of the black Sebring.  At trial, Ms. Davis positively identified Walker in court as the man who robbed her, and she identified the gun found on the floor board as the gun Walker used to commit the crime.

As previously stated, Walker only questions the identification element of the crime charges.  On appeal, Walker makes the same arguments he set forth before the trial court in his motion to suppress the identification.

With respect to the "show up" identification procedure, the evidence at trial reflects that Ms. Davis went to the upper level of the Westbank Expressway after receiving a call from Deputy Goff telling her that they had possibly caught the perpetrator of the robbery.  When Ms. Davis, her mother, and her sister got there (approximately 45 minutes to one hour after the robbery), Ms. Davis saw three police cars with flashing lights.  The police told her to pull behind the police cars and then look through the lights to see if she could identify the man who robbed her.  Ms. Davis testified that she did not get a good look at the black car at that time because she was looking through the lights.

Deputy Goff testified that Ms. Davis was very vocal about wanting to see the black Sebring before she made the identification.  However, Ms. Davis testified that she did not ask the police to allow her to view the vehicle before she viewed

14

the suspect. Nevertheless, Deputy Goff insisted that Ms. Davis not see the black Sebring until after she identified Walker in order to make it a "more fair identification." She took every precaution to block Ms. Davis' view of the black car prior to the identification.

Deputy Goff explained that Ms. Davis pulled up behind several police units that were behind the black Sebring on the shoulder of the expressway. She testified that Ms. Davis might have seen a black car, but she did not think Ms. Davis got a good look at it. Walker and the driver of the black Sebring were sitting on the ground in handcuffs at the time of the identification. Deputy Goff put the two suspects side-by-side to make the identification fair.

Deputy Mackie testified that, during the identification procedure, the two suspects were placed behind his marked vehicle and the black Sebring was in front of his vehicle. However, Ms. Davis testified that the two suspects were leaning against the guard rails and were adjacent to the vehicle. According to Deputy Goff, the two suspects were similar-looking black males with the same height and build, and both had bald heads. Nevertheless, Ms. Davis identified one of the men, Walker, as the man who robbed her. Deputy Goff allowed Ms. Davis to see the black car after she identified Walker, and Ms. Davis positively identified the car as the one used in the robbery. Deputy Goff testified that Ms. Davis was "100 percent sure of the car" at the crime scene and on the expressway because her friend had a silver Sebring convertible that looked just like it.

With respect to the convertible top of the black Sebring, Ms. Davis testified that it was up at the time of the robbery and down at the time of the identification. Deputy Goff explained that Ms. Davis had told her the top was up at the time of the robbery and down at the time of the identification. Ms. Davis asserted that, although she previously testified that the top was up on the expressway, she misinterpreted the lawyer's question.

Ultimately, the State presented evidence that showed Walker robbed the victim while armed with a gun. Defense counsel cross-examined the State's witnesses in an attempt to show that the victim was mistaken in her identification of Walker as the perpetrator. Through that cross-examination, the jury was made aware of the issues Walker has raised on appeal, including the issues regarding the victim's credibility and the identification procedure. Nevertheless, the jury obviously believed the victim's testimony that Walker was the man who robbed her.

The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness.[FN25] Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency.[FN26] Furthermore, the credibility of witnesses will not be reweighed on appeal.[FN27]

[FN25]  State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.

[FN26]  State v. White, 472 So.2d 130, 132 (La.App. 5 Cir. 1985).

[FN27]  State v. Rowan, supra.

In light of the foregoing, we find that a rational trier of fact could have found that the evidence was sufficient under the Jackson standard to support Walker's armed robbery conviction, and the State negated any reasonable probability of misidentification.[11]

Without assigning additional reasons, the Louisiana Supreme Court then likewise denied relief.[12]

Regarding petitioner's claim challenging the admissibility of the identification, the law with respect to such claims is clear:

A two-step process governs the admissibility of identification evidence:  First, a court must determine whether the pretrial identification was impermissibly suggestive; if it was, then second, a court must determine whether, "under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification." Id.  Such an analysis is a mixed question of law and fact.  Livingston v. Johnson, 107 F.3d 297, 309 (5th Cir. 1997).  See also Sumner v. Mata, 455 U.S. 591, 597, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) ("[T]he ultimate question as to the constitutionality of the pretrial identification procedures ... is a mixed question of law and fact ....").

Coleman v. Quarterman, 456 F.3d 537, 544 (5th Cir. 2006).  Because this claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting the claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  For the following reasons, it is evident that petitioner has not made the required showing.

With respect to the first prong of the analysis, it must be noted that "show up" identifications are generally considered impermissibly suggestive.  See United States v. Shaw, 894

---

[11] State v. Walker, 66 So.3d 486, 489-90 (La. App. 5th Cir. 2011); State Rec., Vol. 1 of 5.
[12] State v. Walker, 76 So.3d 1149 (La. 2011); State Rec., Vol. 1 of 5.

F.2d 689, 692 (5th Cir. 1990); United States v. Lang, No. 06-30124, 2007 WL 1725548, at *10 (5th Cir. June 14, 2007) ("Although we have not held 'show-up' identifications of this type to be per se suggestive, there is certainly room for concern."); Montez v. Thaler, No. 2:09-CV-051, 2012 WL 487094, at *7 (N.D. Tex. Jan. 27, 2012) ("The Fifth Circuit has not held the use of "show-up" identifications is per se suggestive, but such identifications are usually considered unduly suggestive."), adopted, 2012 WL 489156 (N.D. Tex. Feb. 15, 2012).  In fact, as the United States Supreme Court has noted that "the practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned."  Stovall v. Denno, 388 U.S. 293, 302 (1967), overruled on other grounds, Griffith v. Kentucky, 479 U.S. 314, 326 (1987). Nevertheless, the use of such a procedure is not unconstitutional per se, and "the admission of evidence of a showup without more does not violate due process." Neil v. Biggers, 409 U.S. 188, 198 (1972).[13]

However, even if the Court assumes that the procedure employed was suggestive in this case, that is only half of petitioner's battle.  In order to prevail, he must also show that, under the "totality of the circumstances," that suggestiveness led to a "substantial likelihood of irreparable misidentification."  As noted, the Louisiana Fifth Circuit Court of Appeal found that it did not.

The state court's determination was not "contrary to" or an "unreasonable application of" clearly established federal law.  The state court identified the correct controlling law on such

---

[13] Here, of course, petitioner was not presented alone but rather with another individual.  However, the undersigned finds that the inclusion of an additional individual was insufficient to strip the procedure of its inherent suggestiveness. Cf. United States v. Clark, 989 F.2d 1490, 1495 & n.2 (7th Cir. 1993) ("While this procedure is not exactly a showup since two suspects were viewed, we agree with defendant Clark that it was more like a showup than a lineup. …  A true showup occurs when only one suspect is presented to witnesses.  In this case, the witnesses were presented with the opportunity to identify someone other than Mr. Clark.  We cannot tell from the record whether this possibility was at all likely because it is not clear that Mr. Griffin and Mr. Clark were at all similar in appearance.  Absent such a showing, we conclude that the procedure more closely resembled a showup than a lineup.").  Although Deputy Goff testified that both suspects in the instant case were at least similar in appearance (both being similar-looking bald, black males of the same height and build), that fact only slightly diminishes the suggestiveness inherent in a "show up."

issues:  Manson v. Brathwaite, 432 U.S. 98 (1977).  As the state court correctly noted, Brathwaite directs courts to utilize five factors in assessing the reliability of an identification:  (1) the witness' opportunity to view the perpetrator at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of witness' description of the perpetrator; (4) the witness' level of certainty concerning the identification; and (5) the time between the crime and the confrontation.  Id. at 114-15.  Moreover, in its opinion, the Louisiana Fifth Circuit Court of Appeal addressed those factors in detail and concluded that there was no substantial likelihood of irreparable misidentification. That determination was not unreasonable; on the contrary, the undersigned has reached the same conclusion for the same reasons as noted by the state court.  Accordingly, in light of the deferential standards mandated by the AEDPA, this claim should be denied.

Petitioner's related claim challenging the sufficiency of the evidence to support his conviction is similarly meritless.  Because a sufficiency of the evidence claim likewise presents a mixed question of law and fact, this Court must again defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).  He has not done so.

As the Louisiana Fifth Circuit Court of Appeal correctly noted, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether

the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"   Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ...  Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").  Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."  Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).

Further, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal habeas corpus proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof.   Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 132 S. Ct. at 2064 ("Under Jackson, federal courts must look to state law for the

substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

Here, petitioner does not challenge the sufficiency of the evidence concerning the elements of the crime; rather, as noted by the state court, he challenges only the sufficiency of the evidence identifying him as the perpetrator.  However, petitioner was identified by the victim, and, for the reasons already explained, the circumstances of her identification were not such that there was substantial likelihood of irreparable misidentification.   Generally, a victim's testimony and positive identification of a defendant is alone sufficient evidence to support a conviction.  Peters v. Whitley, 942 F.2d 937, 941-42 (5th Cir. 1991); see also Fetterley v. Whitley, No. 94-30310, 1994 WL 708655, at *1 n.6 (5th Cir. Dec. 6, 1994); Parker v. Rader, Civ. Action No. 13-3857, 2014 WL 5429452, at *14 (E.D. La. Oct. 24, 2014); Holderfield v. Jones, 903 F. Supp. 1011, 1017 (E.D. La. 1995).  Further, as the state court noted, this case turned on whether the jurors found the victim's testimony credible; the jurors obviously did.  Where, as here, a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal habeas court generally will not grant relief.  See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the Jackson standard for habeas relief."); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*.  Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, under the doubly-deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

## RECOMMENDATION

It is therefore **RECOMMENDED** that petitioner's motion for leave to amend his petition to assert additional claims be **DENIED**.

It is **FURTHER RECOMMENDED** that his federal application for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ninth day of September, 2016.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**